**AFFIRM; and Opinion Filed October 27, 2014.**



In The
### No. 05-13-01651-CV

**CITY OF DALLAS, Appellant and Cross-Appellee**

**V.**

**DIANE SANCHEZ, INDIVIDUALLY AND AS REPRESENTATIVE
OF THE ESTATE OF MATTHEW SANCHEZ, DECEASED,
AND ARNOLD SANCHEZ, Appellees and Cross-Appellants**

**On Appeal from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-13-08320-J**

## OPINION

Before Justices O'Neill, Lang-Miers, and Brown[1]
Opinion by Justice O'Neill

Appellees/cross-appellants Diane and Arnold Sanchez sued the City of Dallas for negligence connected with the death of their son, Matthew. The City filed a motion to dismiss under Rule 91a, Texas Rules of Civil Procedure. The trial court granted the motion in part and denied it in part. Both parties filed an interlocutory appeal. We affirm the trial court's order.

### BACKGROUND

#### A. Rule 91a

Rule 91a permits a party to move to dismiss a cause of action "on the grounds that it has no basis in law or fact." The rule provides that "[a] cause of action has no basis in law if the

---

[1] We thank the parties and their counsel for their participation in the "Appealing to the Public" program of the Dallas Bar Association, the Dallas Independent School District, and this Court in the submission of this case.

allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1. The trial court may conduct an oral hearing on the motion, but "may not consider evidence in ruling on the motion and must decide the motion based solely on the pleading of the cause of action . . . ." TEX. R. CIV. P. 91a.6.

### B. Facts

Under Rule 91a, we accept the factual allegations in the plaintiffs' operative petition as true. The Sanchezes allege that on November 16, 2012, Dallas 911 received two telephone calls from two different cell phone numbers seeking emergency assistance for drug overdoses in two different apartments in the same complex. The calls were made within ten minutes of each other. The second call sought assistance for Matthew. The dispatcher received the address and confirmed that responders were on their way. Then "the call was somehow disconnected." Emergency responders went to the apartment associated with the first call, but not the second. Matthew did not receive emergency treatment. He died six hours after the call and less than an hour before his parents discovered him.

### C. The Sanchezes' pleading

In their third amended original petition, the Sanchezes alleged:[2]

> 5.1 The city of Dallas is liable under the Tort Claims [A]ct for **negligent use and negligent misuse of their computer system and phone system.** The City of Dallas 911 personnel's negligent use or negligent misuse of their computer system hardware and software property and misuse of their phone system property both of which should been used in a manner to have ensured their ability to determine that the calls were two separate incidents coming from two different locations was another proximate cause of Matthew Sanchez not being discovered by emergency responders. Based upon current information and belief it appears that, the 911 employee **negligently misused the phone property in question by hanging up on a pending 911** prior to the arrival of 911 responders **and/or a malfunction of the phone system in**

---

[2] All emphasis is added.

**question caused the caller and the 911 operator to become disconnected**.

5.2 The 911 employees **violated city ordinances** related to safety on the job, including but not limited to City of Dallas Personnel Rule 34-36(b)(5)(A) & 34-36(b)(7)(A). Further, Plaintiffs believe that Defendant's dispatcher **violated local, state and federal regulations, statutes, and/or ordinances** regarding training and accreditation of the employee, and specifically in determining the location of two similar but distinct calls and also in misusing the phone by either intentionally hanging up on the 911 caller or failing to redial a call that had become disconnected due to a phone system malfunction prior to the arrival of emergency personnel. *See e.g.* TEX. OCC. CODE § 1701.405 (requiring 40 hours of training of 911 training for telecommunicators); NENA 56-001 (requiring call backs if disconnected before personnel can determine if assistance is still needed) & NENA 56-005 (sec. 3.6.1 requiring address verification with ALI display and sec. 3.14 requiring making sure the two 911 calls were not redundant).

5.3 Due to the dispatcher's **negligent use and negligent misuse of the computer and phone system property and/or the malfunction of the phone system in question** and/or subsequent failures in appropriate procedures no responders ever arrived at Matthew Sanchez's apartment and he was found dead in his apartment by his parents Diane Sanchez and Arnold Sanchez at approximately 9:20 a.m. on November 16, 2012. The autopsy of Mathew Sanchez reveals the time of death as approximately 8:40 a.m.

5.4 Upon information and belief, the city of Dallas 911 personnel in question negligently **used or misused their computer system** and failed to recognize that the two phone calls were coming in from two different locations at the same apartment complex or alternatively negligently used their computer system in a way that failed to adequately alert other 911 personnel that the phone calls were coming in from two different locations at the same apartment complex—all of which collectively resulted in the emergency responder failing to recognize that two separate 911 calls had been made and failing to recognize that the overdosed individual he was assisting was not in the same location as where Mathew Sanchez 911 call had been placed and where his Apple iphone still remained.

### D.  The trial court's order

The trial court granted the City's motion to dismiss in part and denied it in part.  The order provides that the motion is granted "as to all claims of use/misuse of equipment, failure to follow procedures, failure to train," and denied "as to allegations that the equipment failed or malfunctioned."

## ISSUES

The City contends the trial court erred by partially denying the motion to dismiss because the court does not have subject matter jurisdiction over a negligence claim against a city based upon its malfunctioning telephone equipment.  In their cross-issues, the Sanchezes contend that the trial court erred by granting the City's motion to dismiss their claims relating to use or non-use of equipment.  They also contend the trial court's partial denial of the City's motion was correct.

## STANDARD OF REVIEW

In its motion to dismiss, the City challenged the trial court's subject matter jurisdiction over the Sanchezes' claims.  The parties agree that we review the trial court's ruling on this question of law de novo.  *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–27 (Tex. 2004).[3]

Although rule 91a is new,[4] in this appeal our review is similar to a challenge to the pleadings through a plea to the jurisdiction as described in *Miranda*.  *See id.; see also Austin State Hosp. v. Graham*, 347 S.W.3d 298, 301 (Tex. 2011) (appeal may be taken from orders

---

[3] Several of our sister courts have also applied a de novo standard of review to rulings by trial courts under Rule 91a.  *See Dailey v. Thorpe*, No. 01-13-00492-CV, 2014 WL 4257739, at *2–3 (Tex. App.—Houston [1st Dist.] Aug. 28, 2014, no pet. h.);  *Wooley v. Schaffer*, No. 14-13-00385-CV, 2014 WL 3955111, at *2–4 (Tex. App.—Houston [14th Dist.] Aug. 14, 2014, no pet. h.); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex. App.—Beaumont 2014, pet. filed).

[4] In 2011, section 22.004(g) was added to the Texas Government Code, and provides in part that "[t]he Supreme Court shall adopt rules to provide for the dismissal of causes of action that have no basis in law or fact on motion and without evidence."  *See* TEX. GOV'T CODE ANN. § 22.004(g) (West Supp. 2014). Rule 91a "is a new rule implementing section 22.004 of the Texas Government Code," adopted effective March 1, 2013, and applicable to all pending cases.  *See* TEX. R. CIV. P. 91a cmt. & ed. note (citing Tex. Sup. Ct. Order, Misc. Docket No. 13-9022, Feb. 12, 2013).

denying assertion of immunity, regardless of procedural vehicle used); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 822 n.1 (Tex. App.—Austin 2014, no pet.) (reviewing trial court's order on Rule 91a motion "using the standard of review for pleas to the jurisdiction that challenge only the pleadings"); *Wooley*, 2014 WL 3955111, at \*3 (finding Rule 91a motions "unique," but "analogous to pleas to the jurisdiction"). To determine if subject matter jurisdiction exists, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*

## APPLICABLE LAW

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity from suit and from liability for negligence for municipalities engaged in certain governmental functions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (West Supp. 2014) (liability of municipality). Operation of an emergency ambulance service is a governmental function. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(18). The waiver is limited and entirely dependent upon statute. *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341–42 (Tex. 1998); *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–101.109 (West 2011 & Supp. 2014).

Section 101.021(2) of the TTCA specifically provides that a governmental unit is liable for:

> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

For immunity to be waived, personal injury or death must be proximately caused by a condition or use of tangible personal property. *Bossley*, 968 S.W.2d at 343; *Dallas Cnty. v.*

–5–

*Posey*, 290 S.W.3d 869, 872 (Tex. 2009). Property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Bossley*, 968 S.W.2d at 343. If the injury is "distant geographically, temporally, and causally" from the use or condition of tangible personal property, there is no waiver of immunity. *See id.* There must be a nexus between the condition or use of the property and the injury, requiring more than "mere involvement of property." *Posey*, 290 S.W.3d at 872. The condition "must actually have caused the injury." *Id.*

DISCUSSION

### A. Claims arising from use or non-use of equipment

The trial court granted the City's motion to dismiss the Sanchezes' "claims of use/misuse of equipment, failure to follow procedures, [and] failure to train."[5] Claims for misuse of equipment are actionable under the TTCA, but claims for misuse of information are not. *See Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178–79 (Tex. 1994) (information is not tangible property). And claims for non-use or failure to use property are not actionable. *See Tex. Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 587–88 (Tex. 2001) (legislature has drawn line between "use" and "non-use" of tangible personal property under TTCA).

If the gravamen of a claim for misuse of property is actually misuse of information or non-use of property, there is no waiver of immunity. In *City of El Paso v. Hernandez*, 16 S.W.3d 409, 411 (Tex. App.—El Paso 2000, pet. denied), appellees alleged that the delay in dispatching an ambulance from one El Paso hospital to another resulted in the death of Andrea Hernandez. Although the applicable policy was to transport patients with life-threatening emergencies to the nearest hospital, Hernandez initially was transported to a more distant hospital that did not have

---

[5] In a footnote of their reply brief, the Sanchezes state that they "do not waive their claims concerning training" but "do not appeal those portions of the trial court's order." We therefore do not address those claims.

the equipment necessary to save her life. *Id*. at 411–13. Although appellees' petition alleged the negligent use of an emergency vehicle, the court concluded that "the gravamen of Appellees' complaint is that EMS personnel made an incorrect medical decision" about whether Hernandez had a life-threatening emergency. *Id.* at 416. This complaint "about a non-use of the vehicle" did not fall within section 101.021's waiver of immunity. *Id.* Similarly, delay in dispatching a second ambulance was a non-actionable claim for non-use of a vehicle. *Id.* at 416–17. And the claim that a dispatcher used or misused a telephone or other equipment by failing to timely dispatch an ambulance and by discussing personal matters with his supervisor instead of dispatching the ambulance were non-actionable claims for "non-use of the equipment and misuse or non-use of intangible information." *Id.* at 417.

In *Martinez v. City of Abilene*, 963 S.W.2d 559, 560 (Tex. App.—Eastland 1998, no pet.), cited by the City in oral argument, the court cited numerous cases holding that the use of computers, telephones, or records to collect and communicate information is not a use of tangible personal property under the TTCA. In *Martinez*, a police officer input an incorrect vehicle identification number into the City's computer system when recording a missing person report. *Id.* The plaintiff alleged the incorrect entry caused a delay in identifying the car and locating her missing son, causing his death. *Id.* The court concluded the identification number was "information" put "in the wrong category in the computer," and explained, "[t]his is a case of misuse of information, not a case of misuse of tangible property." *Id.* at 560. The trial court's dismissal of the plaintiff's suit was affirmed. *Id.* The City contends that the Sanchezes' complaints are non-actionable claims for misuse of information.

The Sanchezes complain of "negligent use and negligent misuse" of the City's phone and computer systems in paragraphs 5.1 through 5.4 of their petition. These complaints arise from (1) the City's failure to determine that there were two separate 911 calls from two separate

locations; (2) the 911 employee's hanging up the phone before the arrival of the responders; and (3) the 911 employee's failure to redial the caller. We conclude that the gravamen of each of these complaints is the non-use of tangible property. The telephone system and computer system were not used to determine and track the locations of the two calls received by the 911 operator, or to determine that the two calls were not redundant. And the 911 employee failed to use the telephone system to ensure that the responders had arrived at the correct location. Non-use of tangible property does not waive immunity. *See Miller*, 51 S.W.3d at 587–88; *City of N. Richland Hills v. Friend*, 370 S.W.3d 369, 372 (Tex. 2012) (claim that City failed to retrieve and use automatic external defibrillator device to revive swimmer at water park was non-use claim, not sufficient to waive City's immunity).

The Sanchezes also argue that the City's failure to determine there were two separate 911 calls from two separate locations was a "failure to acquire information," not a non-actionable misuse of information. *See Martinez*, 963 S.W.2d at 560. The Sanchezes contend that failing to acquire information at all is different from misusing information. If no information is acquired, they argue, then there is no information to misuse. Instead, they contend the misuse was of tangible equipment—the telephone system—by failing to verify that the two emergency calls were not redundant. The Sanchezes distinguish *Hernandez* and other cases cited by the City on this ground, noting in those cases the lack of "any allegation of misused equipment causing the failure to acquire information necessary for dispatch." *See, e.g., id.* at 413 (summarizing allegations made in petition). We have concluded, however, that the gravamen of the Sanchezes' "negligent use and negligent misuse" allegations is non-use of property; that is, the failure to use the telephone and computer systems to determine that the two calls were not redundant. The trial court correctly concluded that there was no waiver of immunity for these claims. *See id.* at 416–17. Because the Sanchezes' pleadings were not sufficient to allege a claim for "negligent use

–8–

and negligent misuse of property," the trial court's dismissal of that claim was proper. *See* Tex. R. Civ. P. 91a.1.

### B. Claims arising from malfunctioning equipment

We also conclude the trial court correctly denied the City's motion to dismiss the Sanchezes' claims asserting that equipment failed or malfunctioned. The Sanchezes pleaded in the alternative that Matthew died when the emergency call seeking assistance for him was disconnected by malfunction of the phone system. They specifically alleged that the emergency call was disconnected "due to a phone system malfunction prior to the arrival of emergency personnel." They alleged that due to the malfunction of the phone system, "no responders ever arrived at Matthew Sanchez's apartment and he was found dead in his apartment by his parents . . . ."

The Sanchezes' pleadings alleged that the condition of tangible personal property—the City's emergency phone system—caused Matthew's death. The City argues again that the Sanchezes' claim is actually for misuse of information. Citing *City of El Paso v. Wilkins*, 281 S.W.3d 73, 75 (Tex. App.—El Paso 2008, no pet.), the City argues that the failure to dispatch emergency personnel is a claim for the alleged misuse of intangible information which is insufficient to invoke a waiver of immunity. In *Wilkins*, a police unit did not respond to a 911 emergency call until two and one-half hours after the call was made. *Id.* at 74. During the interim, the caller committed suicide. Although the appellees argued that the inadequate condition of the emergency communications system contributed to the delay, there were "no facts or evidence alleged that there was a problem with the telephones or computer systems used." *Id.* at 75. The court explained that the appellees' claims were "based on the failure to timely dispatch a police unit in response to the call." *Id.* at 76. The court continued, "[t]his failure to dispatch involved the conveyance of information, which is not tangible personal or real

property." *Id.* Although the telephones and computers used were "tangible," there were no allegations that they were "in any defective or inadequate condition" or were misused. *Id.* Without any such allegations, the appellees' complaint did not fall within the statutory waiver of immunity. *Id.*

In *Hernandez*, appellees alleged "that the inadequate condition of the communications system contributed to the delay which caused the death of Mrs. Hernandez." *Hernandez*, 16 S.W.3d at 417. When the telephone system became busy, calls "rolled over" to the fire department, which "could not have been of assistance." *Id.* But because there were no allegations that any calls relating to Hernandez "rolled over" to the fire department "or that this condition of the system contributed to the delay," there was no waiver of immunity. *Id.*

Here, in contrast, the Sanchezes made specific allegations of a malfunction of the telephone system in its use by the 911 operator. A failure or malfunction of the equipment allegedly cut off the caller before the call was completed and contributed to the City's failure to provide emergency medical attention to Matthew. These allegations were sufficient to allege that a condition of tangible personal property caused injury. *See Michael v. Travis Cnty. Hous. Auth.*, 995 S.W.2d 909, 913–14 (Tex. App.—Austin 1999, no pet.) (allegation that two pit bulls escaped through defective fence and attacked two children sufficiently alleged that condition or use of tangible personal property proximately caused injuries, as required by TTCA section 101.021(2)).

## C. Causation

The City argues that even if the Sanchezes' allegations of an equipment malfunction are sufficient, their allegations of proximate cause are not. The City contends that the cause of Matthew's death was a drug overdose, not lack of emergency medical attention. "To find proximate cause, there must be a nexus between the condition of the property and the injury."

*Posey*, 290 S.W.3d at 872. The *Posey* court explained that "[f]or a defective condition to be the basis for complaint, the defect must pose a hazard in the intended and ordinary use of the property." *Id.* In *Posey*, because exposed wires in a telephone cord did not cause Posey's injury (death by suicide using the telephone cord), "the requisite nexus between the condition complained of and the harm was thus not established." *Id.*

In addition, property does not cause injury if it does no more than furnish the condition that makes the injury possible. *Bossley*, 968 S.W.2d at 343. In *Bossley*, an employee left a door unlocked, and a patient escaped from a treatment facility, leaped into the path of a truck on a nearby highway, and was killed. *Id.* at 341–42. The court explained that the patient's death was not caused by the unlocked door: "[a]lthough Roger's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it." *Id.* at 343. The court concluded, "[t]he real substance of plaintiffs' complaint is that Roger's death was caused, not by the condition or use of property, but by the failure of [the facility's] staff to restrain him once they learned he was still suicidal." *Id.* Because Roger's death was "distant geographically, temporally, and causally from the open doors" at the facility, *id.* at 343, proximate cause was lacking.

Here, in contrast, the Sanchezes pleaded that a malfunction of the telephone system, prematurely disconnecting the call between the 911 operator and the caller, was a cause of Matthew's death. The connection, and disconnection, of the call was "in the intended and ordinary use" of the telephone system. *See Posey*, 290 S.W.3d at 872. The Sanchezes pleaded that Matthew survived for six hours after the call was made for emergency medical assistance. They pleaded that had the emergency responders found Matthew before they left the premises, they "would have most likely saved Matthew's life." We cannot say as a matter of law that there

–11–

was no nexus between the alleged malfunction of the telephone system and Matthew's death. *See also Borrego v. City of El Paso*, 964 S.W.2d 954, 959 (Tex. App.—El Paso 1998, pet. denied) (question of fact existed on proximate cause of injury; although plaintiff was struck by car, he was first immobilized and abandoned by emergency responders in backboard on roadway).

## D. Exceptions to waiver for emergency response

The City next contends that even if a waiver is pleaded under section 101.021(2), the City retains its immunity under TTCA section 101.062 governing the provision of 911 emergency services. Under section 101.062, when providing emergency services, the City waives immunity only for an "action that violates a statute or ordinance applicable to the action." TEX. CIV. PRAC. & REM. CODE ANN. § 101.062(b) (West 2011). The City contends the Sanchezes failed to plead a violation of a statute or ordinance applicable to the action.

The Sanchezes respond that in paragraph 5.2 of their petition, they alleged violations of numerous statutes and ordinances. But the City replies that the provisions cited by the Sanchezes are not statutes or ordinances within the meaning of section 101.062, citing *Guillen v. City of San Antonio*, 13 S.W.3d 428, 434 (Tex. App.—San Antonio 2000, pet. denied), and *Fernandez v. City of El Paso*, 876 S.W.2d 370, 376 (Tex. App.—El Paso 1993, writ denied). In *Guillen*, the court concluded that the standard medical operating procedures of the San Antonio fire department were "guidelines" rather than a statute or ordinance to which section 101.062 applied. *See Guillen*, 13 S.W.3d at 433–34. In both *Guillen* and *Fernandez*, the courts concluded that the statutes and ordinances pleaded did not impose affirmative duties on the emergency responders that were violated. *See Guillen*, 13 S.W.3d at 433–34 (Medical Practice Act does not affirmatively impose duty on paramedics to yield authority to physician as alleged by plaintiffs); *Fernandez*, 876 S.W.2d at 376 (provisions of Health and Safety Code and City of

–12–

El Paso municipal code pleaded by appellants did not impose affirmative duty on appellee to respond to emergency situation within certain period of time).

Neither *Guillen* nor *Fernandez* holds that a municipal ordinance is not an "ordinance" within the meaning of section 101.062. The Sanchezes pleaded that "[t]he 911 employees violated city ordinances related to safety on the job, including but not limited to" two specific sections of the Dallas City Code setting forth employee standards of conduct. *See* Dallas, Tex., City Code § 34-36(b)(5)(A) (1997 through Jan. 2014) (unacceptable conduct by employees includes carelessness or negligence); (b)(7)(A) (safety violations). The Sanchezes also pleaded that the City's employees "violated local, state and federal regulations, statutes, and/or ordinances regarding . . . determining the location of two similar but distinct calls" by intentionally hanging up or "failing to redial a call that had become disconnected due to a phone system malfunction prior to the arrival of emergency personnel." Although the City ultimately may establish that no applicable statute or ordinance was violated, the Sanchezes' pleading provides a basis for their claim that section 101.062 does not apply. TEX. R. CIV. P. 91a.6 (trial court must decide motion "based solely on the pleading of the cause of action"); *see also Dailey*, 2014 WL 4257739, at *4 (Rule 91a expressly prohibits trial courts from considering evidence).

### E. Dismissal under Rule 91a

Under Rule 91a.1, dismissal is proper if the Sanchezes' claims have "no basis in law," that is, if their allegations taken as true, together with the inferences reasonably drawn from them, do not entitle them to the relief sought. *See* TEX. R. CIV. P. 91.a.1. The waiver of immunity under section 101.021(2) is far from clear. *See, e.g., Miller*, 51 S.W.3d at 589–91 (Hecht, J., concurring) ("After thirty-two years and hundreds of cases, I am now convinced that it is simply impossible for the courts to meaningfully construe and consistently apply the use-of-property standard in the Tort Claims Act."). Under the standard of Rule 91a.1, we cannot say the

Sanchezes' claim "that the equipment failed or malfunctioned" is a "baseless" cause of action. *See* TEX. R. CIV. P. 91a.1; *see also Wooley*, 2014 WL 3955111, at \*4, *and GoDaddy.com, LLC*, 429 S.W.3d at 754 (both finding Rule 91a similar to federal standard requiring "enough facts to state a claim to relief that is plausible on its face").

## CONCLUSION

We overrule all issues raised in the appeal and cross-appeal. We affirm the trial court's order.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

131651F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF DALLAS, Appellant

No. 05-13-01651-CV          V.

DIANE SANCHEZ, INDIVIDUALLY
AND AS REPRESENTATIVE OF THE
ESTATE OF MATTHEW SANCHEZ,
DECEASED, AND ARNOLD SANCHEZ,
Appellees

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-08320-J.
Opinion delivered by Justice O'Neill,
Justices Lang-Miers and Brown
participating.

In accordance with this Court's opinion of this date, the trial court's Order on Defendant
City of Dallas's Motion to Dismiss Pursuant to Rule 91a is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 27th day of October, 2014.